**The Bronx Defenders**
360 East 161st Street
Bronx, NY 10451
t: 718.838.7878
f: 718.665.0100

March 18, 2020

**BY ECF**
Honorable Nelson S. Roman
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

      Re:    *Rosemond v. Decker, et al.*, No. 19 Civ. 9657 (NSR) (LMS)
              Emergency Motion for Interim Release in Light of COVID-19

Dear Judge Roman:

      The Bronx Defenders represents Jean Rosemond in his habeas petition pending before this Court, which challenges his one year of prolonged detention without a bond hearing. In light of Petitioner's serious medical conditions and resulting vulnerability to severe illness or death if infected by the coronavirus ("COVID-19") while in immigration detention, I write to seek the Court's urgent intervention and respectfully request the Court order Mr. Rosemond to be immediately released pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2011), while his petition remains pending in front of Magistrate Judge Smith. As discussed below, district courts have the authority to order petitioners' immediate release where–as here–extraordinary and exigent circumstances exist.

      Mr. Rosemond was granted relief from removal from the Immigration Judge ("IJ") on September 20, 2019. *See* Pet. ¶ 39 (ECF No. 1). On March 12, 2020, the Board of Immigration Appeals ("BIA") issued a decision dismissing Mr. Rosemond's appeal regarding his removability. Regarding his fear-based relief, the BIA agreed with the IJ's finding that Mr. Rosemond is a member of a "particular social group of people with mental disorders who exhibit erratic behavior," and that if returned to Haiti, he "will like be institutionalized and suffer harm rising to the level of persecution." *See* BIA Dec. at 3-4, Ex. 1. However, the Board remanded for further fact-finding and analysis on two discrete issues. *See id.* at 4-5. As such, Mr. Rosemond's proceedings will continue indefinitely, as he must await another court date, further adjudication by the Immigration Judge, and another potential appeal by ICE, all at a time when the Immigration Courts are barely functioning in response to the current global pandemic.

      Prior to filing, I contacted counsel for Respondents on March 12, 2020 to request Mr. Rosemond's release given the risk he faces if exposed to COVID-19. Opposing counsel indicated today, March 18, 2020, that ICE "will not re-determine custody for [him] at this time." ICE has not provided any further explanation of its summary decision.

**Extraordinary Circumstances of Mr. Rosemond's Case**

Mr. Rosemond is a 48-year-old legal permanent resident who has lawfully lived in New York with his family for the past 37 years. *See* Pet. ¶¶ 19-20. He has been diagnosed with a number of significant medical issues, including schizophrenia, major depressive disorder, alcohol abuse disorder, and low cognitive functioning, and was granted relief by the Immigration Judge on the basis of his conditions. *Id.* ¶¶ 22, 36, 39; BIA Dec. at 3-4. His symptoms include auditory hallucination and required hospitalization in at least four instances due to mental health crises. Pet. ¶ 22. Immigration and Customs Enforcement ("ICE") has detained him at Orange County Jail in Goshen, New York since April 2, 2019. While there, he has not received adequate treatment for his severe mental disorders and continues to deteriorate without medication and proper care. His habeas petition has been fully briefed before Magistrate Judge Smith since November 25, 2019.

The U.S. Centers for Disease Control and Prevention ("CDC") has stated that the populations most at risk for serious illness from COVID-19 include older adults and people with chronic medical conditions. The CDC has recommended that such individuals should "avoid crowds, especially in poorly ventilated spaces," as the "risk of exposure to viruses lie COVID-19 may increase in crowded, closed-in settings with little air circulation if there are people in the crowd who are sick."[1] According to the World Health Organization, "[a]round 1 in 6 people who gets Covid-19 becomes seriously ill and develops difficulty breathing."[2] Individuals at risk may suffer from pneumonia, difficulty breathing, organ failure, and even death once they contract COVID-19.[3] As Jaimie Meyer, MD, MS, an Assistant Professor of Medicine at Yale who specializes in the topic of infectious disease in the criminal justice system, noted, "Failure to provide adequate mental health care [to those with underlying chronic mental health conditions], as may happen when health systems in jails and prisons are taxed by COVID-19 outbreaks, may result in poor health outcomes. Moreover, mental health conditions may be exacerbated by the stress of incarceration during the COVID-19 pandemic, including isolation and lack of visitation." Declaration of Dr. Jaimie Meyer ¶ 30 ("Meyer Decl."), Mar. 15, 2020, Ex. 2.

As of March 18, 2020, COVID-19 has infected more than 203,500 people worldwide and more than 6,400 people in the United States; over 8,200 people have died after contracting the virus.[4] The New York metropolitan area is now the epicenter of the COVID-19 in the United States with over 1,600 cases in New York and New Jersey.[5] Area officials are taking drastic

---

[1] *See Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention (last accessed Mar. 10, 2020), www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html

[2] *See Q&A on Coronavirus (COVID-19)*, World Health Organization (last accessed Mar. 10, 2020), https://www.who.int/news-room/q-a-detail/q-a-coronaviruses

[3] *See* Nanshan Chen, et al., *Epidemiological and Clinical Characteristics of 99 Cases of 2019 Novel Coronavirus Pneumonia in Wuhan, China: A Descriptive Study*, The Lancet (Jan. 30, 2020), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30211-7/fulltext

[4] Johns Hopkins University, "COVID-19 Global Cases by the Center for Systems Science and Engineering," Coronavirus Resource Center, https://coronavirus.jhu.edu/map.html (Mar. 18, 2020).

[5] *See supra* n. 4; *U.S. Coronavirus Map*, The New York Times (Mar. 18, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html; *De Blasio Declares State of Emergency in NYC, and Large Gatherings Are Banned* (Mar. 13, 2020), www.nytimes.com/2020/03/12/nyregion/coronavirus-new-york-update.html

measures such as declaring states of emergency, creating a "containment zone," and deploying the National Guard and Army Corps of Engineers to stem the outbreak in the region.[6] New York and New Jersey recently banned all gatherings of more than 50 people, and New York City closed all schools and bars and restaurants.[7]

With the rapid spread of the virus in the New York metropolitan area, medical and public health experts agree that it is inevitable that COVID-19 will imminently reach detention centers such as Orange County Jail.[8] "According to health experts, it is not a matter of if, but when, this virus breaks out in jails and prisons. . . . Jails are particularly frightening in this pandemic because of their massive turnover."[9] Westchester County, which neighbors Orange County, has experienced one of the most concentrated outbreaks, with over 220 confirmed cases.[10] As the former chief medical officer for the New York City Jail System stated, "[w]hen COVID-19 arrives in a community, it will show up in jails and prisons."[11]

In China, where the pandemic began, "Coronavirus suddenly exploded in [] prisons last week, with reports of more than 500 cases spreading across five facilities in three provinces."[12] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[13] Courts across Iran have temporarily released 54,000 inmates to help contain coronavirus across the country.[14] In the U.S., some jurisdictions are already proactively facilitating the release of elderly and sick prisoners and reducing jail populations by discouraging or refusing the admission of those arrested on non-violent misdemeanor charges.[15] **There is no reason why ICE, an agency that civilly detains people, cannot and should not do the same.**

---

[6] *N.Y. Creates "Containment Zone" Limiting Large Gatherings in New Rochelle*, The New York Times (Mar. 10, 2020), https://www.nytimes.com/2020/03/10/nyregion/coronavirus-new-york-update.html; *New York, New Jersey, and Connecticut ban gatherings of more than 50 people*, The New York Times (Mar. 16, 2020), https://www.nytimes.com/2020/03/16/world/coronavirus-news.html

[7] *See supra* n. 6.

[8] *See* Amanda Klonsky, MD, *An Epicenter of the Pandemic Will be Jails and Prisons, if Inaction Continues*, The New York Times (Mar. 16, 2020), www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html; Homer Venters, MD, *Four Ways to Protect Our Jails and Prisons from Coronavirus*, The Hill (Feb. 29, 2020), thehill.com/opinion/criminal-justice/485236-4-ways-to-protect-our-jails-and-prisons-from-coronavirus

[9] *See* Klonsky, *supra* n. 4.

[10] *Trump and Cuomo spar as cases continue to climb*, The New York Times (Mar. 16, 2020), https://www.nytimes.com/2020/03/16/nyregion/coronavirus-new-york-update.html

[11] *See supra* n. 8.

[12] *See* Anne C. Spaulding, MD MPH, Coronavirus and the Correctional Facility: for Correctional Staff Leadership at 5, 16, Mar. 9, 2020;  US Prisons, Jails on Alert for Spread of Coronavirus, NBC (Mar. 7, 2020) https://www.nbcboston.com/news/coronavirus/us-prisons-jails-spread-of-coronavirus/2087202/.

[13] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020), https://cnn.it/2W4OpV7

[14] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020), https://apnews.com/af98b0a38aaabedbcb059092db356697

[15] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners: Sarah Lustbader,

For a number of reasons, "[p]rison and jail populations are extremely vulnerable to a contagious illness like COVID-19."[16] Detainees are at increased risk because of the self-contained environment and close proximity with which they are forced to interact.[17] Even in normal times, jails are "fertile grounds for infectious disease" where the "spread of communicable diseases . . . is obviously elevated and accelerated."[18] ICE's New York City-area facilities are no exception: at Bergen County Jail in 2019, a serious mumps outbreak resulted in the quarantine of dozens of immigration detainees.[19] Now, however, facilities such as Orange County Jail face a much more serious challenge in containing COVID-19 because no vaccines or herd immunity exist and the virus appears to be highly transmissible.[20] Dr. Meyer states that the local ICE facilities, including Orange County Jail, are "dangerously under-equipped and ill-prepared to prevent and manage a COVID-19 outbreak." Meyer Decl. ¶ 26.

Disturbingly, ICE detainees like Mr. Rosemond have little to no access to the self-protective tools the rest of us take for granted, despite their elevated risk of exposure and infection. At many jails, including Orange County Jail, there are a small number of bathrooms and medical beds for many detainees and a lack of access to soap and functioning sinks.[21] Indeed, our clients have recently reported that there is no hand sanitizer and attorneys report that there is rarely soap in the visitor bathrooms of Orange County Jail. Being held at Orange County

---

*Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020), https://theappeal.org/sentenced-to-covid-19/.); Cuyahoga County, OH is holding mass pleas and bail hearings to reduce the current jail population, https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html; Mahoning County, OH jail is refusing all non-violent misdemeanor arrestees, https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/; *see also* Collin County, TX, https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/.

[16] Maria Morris, Are Our Prisons and Jails Ready for COVID-19?, ACLU.org, Mar. 6, 2020, https://www.aclu.org/news/prisoners-rights/are-our-prisons-and-jails-ready-for-covid-19/

[17] *See* Anne C. Spaulding, MD, Coronavirus COVID-19 and the Correctional Facility: For the Correctional Healthcare Worker, Emory Center for the Health of Incarcerated Persons (Mar. 9, 2020), https://www.ncchc.org/filebin/news/COVID_for_CF._HCW_3.9.20.pdf

[18] Haven Orecchio-Egresitz, *US jails and prisons are 'fertile grounds for infectious disease' and preventing the spread of coronavirus behind bars will be a challenge, say experts*, Business Insider (Mar. 5, 2020), www.businessinsider.com/experts-keeping-prisons-free-of-coronavirus-will-be-a-challenge-2020-3

[19] Stephen Rex Brown, *ICE Jail in Bergen County Quarantined*, nydailynews.com (Jun. 11, 2019); Doug Criss, *6 Inmates at a New Jersey Jail Came Down With The Mumps*, CNN (June 13, 2019), https://www.cnn.com/2019/06/12/us/mumps-jersey-bergen-county-jail-trnd/index.html; *see also* Letter from Representatives Carolyn B. Maloney & Jamie Raskin to the Acting Sect. of Homeland Security (Mar. 11, 2020), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-03-11.CBM%20and%20JR%20to%20Wolf-DHS%20re%20COVID-19.pdf

[20] Sheri Fink, *Worst-Case Estimates for U.S. Coronavirus Deaths*, New York Times (Mar. 13, 2020), https://www.nytimes.com/2020/03/13/us/coronavirus-deaths-estimate.html

[21] *See* Keri Blakinger and Beth Schwartzapfel, *When Purell Is Contraband, How Do You Contain Coronavirus?*, The Marshall Project (Mar. 6, 2020), www.themarshallproject.org/2020/03/06/when-purell-is-contraband-how-do-you-contain-coronavirus

Jail exponentially increases the likelihood that once COVID-19 reaches the detention center, Petitioner will face severe illness or death.

**Immediate Interim Release is Required**

In his petition currently pending with Magistrate Judge Smith, Mr. Rosemond seeks a constitutionally-adequate bond hearing or immediate release. He now respectfully seeks emergency relief in form of immediate release from this Court while his petition continues to be adjudicated.

Federal courts have inherent authority to release habeas corpus petitioners from immigration detention during the pendency of the petition. *See Mapp*, 241 F.3d 223, 231; *see also Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978) ("A district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody."); *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153-54 (2d Cir. 2007) (recognizing federal courts' inherent authority to admit immigration petitioners to bail even after the enactment of the REAL ID Act); *S.N.C. v. Sessions*, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) ("Federal courts have 'inherent authority to admit to bail petitioners in immigration cases.'"); *Ramatu Kiaddi v. Sessions*, 18-cv-1584 (AT), Order (S.D.N.Y. March 2, 2018) (same); *cf. Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2005) (explaining that a prior panel released petitioner on bail under *Mapp* during the pendency of the appeal of his habeas petition challenging mandatory detention). This Court has ordered similar "equitable relief" in the form of immediate release to an immigration petitioner where there was no other "appropriate remedy." *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 372 (S.D.N.Y. 2019).

In exercising authority under *Mapp*, courts look to (1) whether the petition for a writ of habeas corpus raises substantial claims, and (2) whether extraordinary circumstances exist that require release in order to make the writ effective. *See S.N.C.*, 2018 WL 6175902, at *6. Mr. Rosemond meets both conditions, and this Court need not – and should not – wait until he contracts the potentially deadly virus to provide a remedy. The Constitution protects against "future harm" such that "a remedy for unsafe conditions need not await a tragic event." *Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 318 (D.N.J. 2008), *aff'd sub nom. Muhammad v. N.J. Dep't of Corr.*, 396 F. App'x 789 (3d Cir. 2010).

First, Petitioner has made substantial claims in his petition. Courts must assess whether "the [habeas] petition present merits that are more than slightly in petitioner's favor." *Richard v. Abrams*, 732 F. Supp. 24, 25 (S.D.N.Y. 1990) (*citing Rado v. Manson*, 435 F. Supp. 349, 350–51 (D. Conn. 1977)).  Prolonged detention, unquestionably, is a claim that raises substantial constitutional concerns.  *See, e.g.*, *Leslie v. Holder*, 865 F. Supp. 2d 627, 639 (M.D. Pa. 2012) (conducting bail hearing under *Mapp* paradigm and granting the petitioner's release after finding "that [the petitioner's] claims . . . that he has been subjected to an unreasonably prolonged detention have substantial merit"). Mr. Rosemond's detention—352 days as of today—without a bond hearing violates his due process rights under the Fifth Amendment. His unjustified detention is particularly egregious because it results from numerous and unreasonable delays *caused by the government*. *See* Pet. ¶¶ 29-39, 67.

5

Numerous district courts within the Second Circuit have held that prolonged mandatory detention of periods significantly less than one year raises due process concerns, such that constitutionally-adequate bond hearings are required. *See* Pet. ¶ 54 (collecting cases); Reply at 5 (ECF No. 12); *see also* Letter Supp. Auth. (ECF No. 14) (citing *Sophia v. Decker*, 19-cv-9599 (LGS) (S.D.N.Y. Feb. 14, 2020), granting release to 8 U.S.C. § 1226(c) petitioner detained only seven months). Thus, there is little question that his petition raises "substantial claims" such that release under *Mapp* is appropriate.

Second, extraordinary circumstances exist that require the release of Petitioner. Mr. Rosemond's acute mental health conditions render him particularly vulnerable and more susceptible to severe illness after contracting COVID-19 as they increase his risk of infection and make it more difficult for him and jail staff to treat any physical health condition, which would then exacerbate his mental illnesses. *See supra*.[22] Like other petitioners who have been granted release under *Mapp* pending the adjudication of their habeas petitions, he faces severe consequences from continued detention. *See S.N.C.*, 2018 WL 6175902, at *6 (granting release under *Mapp* to petitioner who suffered from PTSD and "depression and physical pain as a result of being separated from her children, the youngest of which she [was] still nursing"); *Kiaddi*, Order at 2-3 (granting release under *Mapp* to petitioner with a breast lump, noting "[t]he fact of Petitioner's deteriorating health, therefore, supports her release"); *D'Alessandro v. Mukasey*, No. 08 Civ. 914, 2009 WL 799957, at *3 (W.D.N.Y. Mar. 25, 2009) (finding extraordinary circumstances to release petitioner under *Mapp* where petitioner had "a number of serious, potentially debilitating health problems"); *see also United States v. Mett*, 41 F.3d 1281, 1282 n.4 (9th Cir. 1994) (in the criminal prisoner context, noting that extraordinary circumstances warranting bail for habeas petitioners "include a serious deterioration of health while incarcerated").

Moreover, release is necessary because Mr. Rosemond's petition will not be adjudicated for, at minimum, three weeks, and possibly longer. Magistrate Smith has scheduled oral arguments for March 26, 2020. *See* ECF No. 15. After she issues a decision, the parties will have two weeks to object to her report and recommendation before this Court issues a final decision. At that time, it is very possible that Varick Immigration Court, where Mr. Rosemond's proceedings are venued, will be closed due to the COVID-19 pandemic. The non-detained immigration courts in New York, including at Varick Street, have already closed as of this morning.[23] Thus it is highly likely that any order issued by this Court requiring a

---

[22] *See also Management of physical health conditions in adults with severe mental disorders*, World Health Organization (2018) at 10, https://apps.who.int/iris/bitstream/handle/10665/275718/9789241550383-eng.pdf; *Prisons and Health*, World Health Organization (2014) at 73, http://www.euro.who.int/__data/assets/pdf_file/0005/249188/Prisons-and-Health.pdf (noting that managing of infectious diseases in prisons must take into account the dynamics between mental health challenges and physical health); Dr. Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (2007), https://academic.oup.com/cid/article/45/8/1047/344842; Management of physical health conditions in adults with severe mental disorders, World Health Organization (2018), https://apps.who.int/iris/bitstream/handle/10665/275718/9789241550383-eng.pdf

[23] https://www.justice.gov/eoir/eoir-operational-status-during-coronavirus-pandemic

constitutionally-adequate bond hearing will not be implemented, further violating his constitutional rights.

Here, as in *Martinez*, Mr. Rosemond has "shown cognizable harm from the lack of due process" afforded to him vis-à-vis his liberty interest while in ICE custody. 385 F. Supp. 3d at 371. He has been detained for almost a full year without any justification for his prolonged incarceration by ICE; Respondents have repeatedly delayed his proceedings; he has lawfully resided in the United States for over 35 years with his elderly U.S. citizen mother and his six U.S. citizen siblings; he turned himself into ICE by presenting himself at their office for detention on April 2, 2019; he has a bona fide challenge to his removal; and he is now at heightened risk of severe injury as a result of the global pandemic. *See* Pet. ¶¶ 20-22, 26. ICE's intransigence in refusing to release him is yet another sign of its complete blindness and failure to understand the magnitude of the current global pandemic.

In light of the mounting public health crisis and the acute and irreparable harm Mr. Rosemond will likely experience, this Court should exercise its inherent authority to order his release "before [his] health declines past the point at which [he] is unable to adjudicate [his] . . . applications." *See S.N.C. v. Sessions*, No. 18-cv-7680, 2018 WL 6175902, at *6.

I thank the Court for its consideration of this submission.

Respectfully submitted,

_____/s/_____
Suchita Mathur, Esq.
The Bronx Defenders
347-842-1295
suchitam@bronxdefenders.org
*Counsel for Petitioner*

cc:     *Counsel for Respondents* (by ECF)