

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

| | |
|---|---|
| Gleason, Conor Timothy<br>The Bronx Defenders<br>360 E. 161st Street<br>Bronx, NY 10451 | DHS/ICE Office of Chief Counsel - NYD<br>201 Varick, Rm. 1130<br>New York, NY 10014 |

**Name: ROSEMOND, JEAN DUCARMEL**     A 037-888-386

**Date of this notice: 3/12/2020**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
Gemoets, Marcos

Userteam: Docket





U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike. Suite 2000
Falls Church. Virginia 22041

**ROSEMOND, JEAN DUCARMEL**
**A037-888-386**
**ORANGE COUNTY CORRECTIONAL CTR**
**110 WELLS FARM ROAD**
**GOSHEN, NY 10924**

**DHS/ICE Office of Chief Counsel - NYD**
**201 Varick, Rm. 1130**
**New York, NY 10014**

**Name: ROSEMOND, JEAN DUCARMEL**   A 037-888-386

**Date of this notice: 3/12/2020**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

**Panel Members:**
Gemoets, Marcos

Userteam:

**U.S. Department of Justice**  Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:  A037-888-386 – New York, NY                        Date:    **MAR 1 2 2020**

In re:  Jean Ducarmel ROSEMOND a.k.a. Mike Pule a.k.a. Jean Duke Rosemond

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Conor T. Gleason, Esquire

ON BEHALF OF DHS:   Karnellia Brake
                    Assistant Chief Counsel

APPLICATION:  Termination; withholding of removal

 

    In a decision dated September 20, 2019, an Immigration Judge found the respondent, a native and citizen of Haiti and lawful permanent resident of the United States, removable as an aggravated felon, as defined in sections 237(a)(2)(A)(iii) and 101(a)(43)(T) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(T). The Immigration Judge also granted the respondent's application for withholding of removal under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A). The respondent appealed the Immigration Judge's order of removal. The Department of Homeland Security (DHS) appealed the Immigration Judge's grant of withholding of removal. The respondent's appeal will be dismissed, and the record will be remanded.

    We review findings of fact determined by the Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

    The Immigration Judge found the respondent removable as an aggravated felon under sections 237(a)(2)(A)(iii) and 101(a)(43)(T) of the Act based on the respondent's February 2001 conviction for bail jumping in the second degree in violation of New York Penal Law (NYPL) section 215.56 (IJ at 3-4; Exh. 2). The respondent challenges that determination on appeal (Respondent's Br. at 5-12). We conclude that the respondent is removable on this charge.

    To qualify as an aggravated felony under section 101(a)(43)(T) of the Act, an offense must relate to a generic "failure to appear" crime that encompasses five discrete elements: (1) a failure to appear, (2) before a court, (3) pursuant to a court order, (4) to answer to or dispose of a charge of a felony, (5) where the felony was one for which a sentence of 2 years' imprisonment or more may be imposed. *Matter of Garza-Olivares*, 26 I&N Dec. 736, 739 (BIA 2016). We have held that the first two requirements are subject to the categorical approach, but the latter three requirements are to be found using the circumstance-specific approach. *Id.* at 739-40.

A037-888-386

The United States Court of Appeals for the Second Circuit found that first degree bail jumping under NYPL section 215.57 met the first four requirements of the aggravated felony definition "on its face." *Henriquez v. Sessions*, 890 F.3d 70, 73 (2d Cir. 2018). The Second Circuit departed from the Board in its approach to the fifth requirement, looking to the maximum time the alien could be imprisoned for the bail jumping conviction, not the underlying charges. *Id.* at 73-74. As first degree bail jumping was subject to a maximum imprisonment of 7 years, all of the conditions were met, and the alien was removable as an aggravated felon under section 101(a)(43)(T) of the Act. *Id.*

We now compare the statute evaluated by the Second Circuit in *Henriquez*, first degree bail jumping under section 215.57, with the respondent's conviction for second degree bail jumping under section 215.56. First degree bail jumping provides as follows:

> A person is guilty of bail jumping in the *first* degree when by court order he has been released from custody or allowed to remain at liberty, either upon bail or upon his own recognizance, upon condition that he will subsequently appear personally in connection with an *indictment pending against him which charges him with the commission of a class A or class B felony*, and when he does not appear personally on the required date or voluntarily within thirty days thereafter.

NYPL section 215.57 (emphasis added).

In comparison, the respondent was convicted of second degree bail jumping, which states:

> A person is guilty of bail jumping in the *second* degree when by court order he has been released from custody or allowed to remain at liberty, either upon bail or upon his own recognizance, upon condition that he will subsequently appear personally in connection with *a charge against him of committing a felony*, and when he does not appear personally on the required date or voluntarily within thirty days thereafter.

NYPL section 215.56 (emphasis added).

We have italicized the only wording difference between the two statutes, which relate to the underlying charge at issue. *See People v. Wilder*, 712 N.E.2d 652, 655 (N.Y. 1999) ("The degree of the bail jumping crime is premised upon the seriousness of the pending charge upon which the order requires defendant to later appear."). For first degree bail jumping, there must be a pending indictment for an A or B class felony. For second degree bail jumping, a charge of any felony will suffice.

The respondent argues this difference invalidates requirement (4), that the respondent be called "to answer to or dispose of a charge of a felony" (Respondent's Br. at 9-12). Specifically, the respondent argues that requirement (4) should be understood to reflect the federal definition of a felony "charge," which requires an indictment and an ongoing charge, and that second degree bail jumping does not meet the federal definition of a felony "charge" (Respondent's Br. at 10-12). We disagree. As an initial matter, not all federal charges must be brought by indictment. *See, e.g.,*

2

A037-888-386

Fed. R. Crim. P. 7(b) ("An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment."). Furthermore, the Second Circuit found that first degree bail jumping met requirement (4) despite the fact that a defendant can be convicted of first degree bail jumping even if the underlying felony for which the defendant failed to appear was dismissed. *See, e.g., People v. Eiffel*, 616 N.E.2d 1099 (N.Y. 1993). More significantly, nothing in the text of section 101(a)(43)(T) of the Act indicates that "a charge of a felony" must be brought by an indictment or relate to an ongoing charge. The language simply requires that there be a felony charge, and we decline to read additional, narrowing requirements into the statute. Thus, regardless of whether the categorical or the circumstance-specific approach applies, we conclude that second degree bail jumping meets requirement (4) of the aggravated felony definition (Respondent's Br. at 8-9).

The respondent also argues that second degree bail jumping does not meet requirement (2), that the conviction be for a failure to appear "before a court" (Respondent's Br. at 5-7). The Second Circuit deferred to our conclusion that the categorical approach applies to this element, and found a substantially similar statute—first degree bail jumping—had this element "on its face." *Henriquez v. Sessions*, 890 F.3d at 73. Given the Second Circuit's conclusion, and that the respondent has not articulated cause to deviate from our prior decision, we are unpersuaded that second degree bail jumping does not meet requirement (2) of the aggravated felony definition. *See Matter of Garza-Olivares*, 26 I&N Dec. at 739.

Accordingly, we are unpersuaded that the respondent's conviction for second degree bail jumping under section 215.56 does not meet all the necessary elements of the aggravated felony definition under section 101(a)(43)(T) of the Act. Therefore, we affirm the Immigration Judge's determination that the respondent is removable as an aggravated felon under sections 237(a)(2)(A)(iii) and 101(a)(43)(T) of the Act (IJ at 3-4).

Turning to the respondent's request for withholding of removal, the Immigration Judge found that the respondent met his burden to show it is more likely than not he will be persecuted in Haiti on account of his membership in the particular social group of people with mental disorders who exhibit erratic behavior (IJ at 5-7; Tr. at 74-77, 101-24). The DHS challenges that determination on appeal (DHS's Br. at 6-12).

First, the DHS argues that the Immigration Judge erred in finding that the respondent established a cognizable particular social group and his membership in such group (DHS's Br. at 6-10). The DHS argues that the respondent's proposed group lacks a common, immutable characteristic and is not defined with sufficient particularity (DHS's Br. at 7-9). *See Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014), *rev'd on other grounds by Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016).

The Immigration Judge fully considered the evidence regarding the respondent's diagnosis and the manifestations of his diagnosis (IJ at 5-6; Exh. 4 at Tabs B-D; Tr. at 74-77, 101-24). We discern no clear error in her finding that the respondent suffers from a specific illness, which he cannot change, such that his proposed particular social group is defined with sufficient particularity and is based on an immutable characteristic. Similarly, based on the Immigration Judge's

3

A037-888-386

reasonable interpretation of the evidence presented, we discern no clear error in her determination that the respondent is a member of such group. The Immigration Judge has broad latitude as to how to interpret the evidence before her. *See Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011), *remanded on other grounds, Radojkovic v. Holder*, 599 F. App'x 646, 648 (9th Cir. 2015). Moreover, the Board is not permitted to substitute its own view of the evidence on appeal. Clear error exists only where the Immigration Judge's findings "are illogical or implausible, or without support in inferences that may be drawn from the facts in the record." *Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018) (citations and quotations marks omitted). The DHS did not establish that the Immigration Judge's particular social group findings "are illogical or implausible," and therefore we uphold them on appeal.

Next, the DHS contends that the Immigration Judge erred in finding that it is more likely than not the respondent would be harmed on account of his membership in a particular social group and that the harm would be perpetrated by the Haitian government or by private actors the government is unable or unwilling to control (DHS's Br. at 10-12). In determining that it is more likely than not the respondent would suffer persecution, the Immigration Judge found that the respondent will likely be institutionalized and suffer harm rising to the level of persecution inside the institution (IJ at 7; Exh. 4 at Tab E). These findings are not clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586 (BIA 2015).

However, persecution is harm inflicted because the alleged persecutor seeks to overcome the protected characteristic. *See Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996). To qualify for withholding of removal, the respondent must establish not only that he will suffer harm rising to the level of persecution, but that the alleged persecutor will be motivated to harm him based on his protected ground. *See Matter of N-M-*, 25 I&N Dec. 526, 530 (BIA 2011); *see also Matter of A-B-*, 27 I&N Dec. at 337 (noting that persecution involves an intent to target a belief or characteristic). Although the Immigration Judge found that the respondent will likely be persecuted in Haiti, she did not make sufficient factual findings regarding the motive of those committing the abuses (IJ at 7). *See Matter of N-M-*, 25 I&N Dec. at 532 (stating that the motive of the persecutor is a finding of fact to be determined by the Immigration Judge and reviewed for clear error).

Similarly, the Immigration Judge did not make sufficient factual findings regarding whether the harm the respondent fears will be perpetrated by the Haitian government or by private individuals the government is unable or unwilling to control. The Immigration Judge states, "[t]he record reveals that [such harm] would be at the hand of the government or an entity that the government is unable or unwilling to control," but she does not cite any evidence to support that finding (IJ at 7). We note that on appeal, the DHS highlights evidence documenting the Haitian government's efforts to protect the mentally ill (DHS's Br. at 12). It is unclear from the Immigration Judge's decision if she considered such evidence.

Accordingly, we find it necessary to remand the record to the Immigration Judge for further fact finding and analysis regarding the issues of nexus and government involvement in the feared persecution. *See Matter of S-H-*, 23 I&N Dec. 462, 465 (BIA 2002) (noting the Board's limited fact-finding authority on appeal). The Immigration Judge should further consider any other relief

4

·A037-888-386

nor previously addressed. We express no opinion as to the outcome of these proceedings. The following orders will be entered.

ORDER: The respondent's appeal is dismissed.

FURTHER ORDER: The record is remanded to the Immigration Judge for further proceedings consistent with this order and for the entry of a new decision.

_____
FOR THE BOARD

File No: A037-888-386

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
201 VARICK STREET
NEW YORK, NEW YORK

File No: A037-888-386

| | | |
|---|---|---|
| In the Matter of: | : | |
| **ROSEMOND, Jean Ducarmel** | : | IN REMOVAL PROCEEDINGS |
| Respondent. | : | |

| CHARGES: | INA § 237(a)(2)(A)(iii) | Aggravated Felony – Sexual Abuse of a Minor |
|---|---|---|
| | INA § 237(a)(2)(A)(iii) | Aggravated Felony – Failure to Appear before a Court |
| | INA § 237(a)(2)(E)(i) | Crime of Child Abuse, Child Neglect, or Child Abandonment |
| APPLICATION: | | Motion to Terminate Proceedings |

| ON BEHALF OF RESPONDENT | ON BEHALF OF DHS |
|---|---|
| Conor Timothy Gleason, Esq. | Assistant Chief Counsel |
| The Bronx Defenders | Office of the Chief Counsel |
| 360 E. 161st Street | 201 Varick Street, Room 1130 |
| Bronx, NY 10451 | New York, NY 10014 |

## DECISION OF THE IMMIGRATION JUDGE

Jean Ducarmel Rosemond ("the Respondent") is a 47-year-old native and citizen of Haiti who was admitted to the United States as a lawful permanent resident ("LPR") on or about April 15, 1983, when he was approximately ten years old. *See* Exhibit ("Ex,") 1. He has not departed the United States since then.

The Department of Homeland Security ("DHS") charges the Respondent with removability pursuant to INA § 237(a)(2)(A)(iii), INA § 237(a)(2)(A)(iii) and INA § 237(a)(2)(E)(i) as an alien who, after admission, was convicted of, respectively, an aggravated felony as defined in INA § 101(a)(43)(A); an aggravated felony as defined in INA § 101(a)(43)(T); and a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment. *See* Exs. 1 and 1A.

1

File No: A037-888-386

For the reasons set forth below, the Court finds the Respondent removable for having been convicted of an aggravated felony as defined at §101(a)(43)(T), but not for the other grounds of deportability. In addition, the Court finds that the Respondent has sustained his burden of proof to establish that it is more likely than not that he will be harmed in Haiti on account of his membership in the particular social group, "People with mental disorders who exhibit erratic behavior." Accordingly, his application for withholding of removal pursuant to INA § 241(b)(3) will be granted. The Court does not reach the Respondent's application for relief pursuant to the Torture Convention.

The entirety of the record, including the parties' arguments and briefings, have been considered.

The Respondent contests removability on all grounds, and the DHS contends that the Respondent is removable as charged. See Resp't Motion to Terminate (June 2, 2019); Resp't Reply (Aug. 7, 2019); DHS Brief (July 26, 2019). The DHS bears the burden of establishing by clear and convincing evidence that an alien who has been admitted to the United States is removable as charged. INA § 240(c)(3)(A); 8 C.F.R. § 1240.8(a).

The Court will consider each charge of removability, in turn.

### A. INA § 237(a)(2)(A)(iii): Aggravated Felony for Sexual Abuse of a Minor

The term "aggravated felony" includes murder, rape, or sexual abuse of a minor. INA § 101(a)(43)(A). Here, the Respondent was convicted under NYPL § 130.60(2), Sexual Abuse in the Second Degree on January 3, 1993. See DHS Evidence, Tab B (June 6, 2019). "A person is guilty of sexual abuse in the second degree when he subjects another person to sexual contact and when such other person is . . . [l]ess than fourteen years old." NYPL § 130.60(2) (1984).

The BIA has adopted the meaning of "sexual abuse" found in 8 U.S.C. § 3509(a)(8) to "operate as a 'guide in identifying the types of crimes [it] would consider to be sexual abuse of a minor.'" Oouch v. U.S. Dep't of Homeland Sec., 633 F.3d 119 (2d Cir. 2011) (citing Matter of Rodriguez-Rodriguez, 22 I&N Dec. 991, 994-96 (BIA 1999)). Sexual abuse includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children. 18 U.S.C. § 3509(a)(8). "Sexually explicit conduct" includes "sexual contact," which refers to "the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire of any person . . . " 18 U.S.C. § 3509(a)(9).

The Second Circuit has held that "it is by no means clear that admitting to 'sexual contact with a minor' under New York law would be enough to establish 'sexual abuse of a minor' under the INA." See James v. Mukaskey, 522 F.3d 250 (2d Cir. 2008); Flores v. Holder, 779 F.3d 159 (2d Cir. 2015). New York law has defined "sexual contact" to include "any touching," "of the sexual or other intimate parts of a person." James, 522 F.3d at 258. Under New York law, a kiss on the mouth, contact with the leg, and contact with the navel constitutes "sexual contact." See

2

*People v. Rondon*, 152 Misc.2d 1018 (Queens Co. Crim. Ct. 1992); *People v. Morbelli*, 144 Misc.2d 482 (N.Y.Crim.Ct.1989); *People v. Belfrom,* 124 Misc.2d 185 (N.Y.Sup.Ct.1984). The generic federal definition of sexual contact, however, is limited to the touching of the "genitalia, anus, groin, breast, inner thigh, or buttocks." 18 U.S.C. § 3509(a)(9).

The DHS contends that the federal definition of "sexual abuse" encompasses a broad range of conduct which is not limited to contact. *See* DHS Brief, p. 6 (July 26, 2019). The Court agrees that while physical contact is not necessarily required for "sexual abuse," the definition of "sexual abuse" in 18 U.S.C. § 3509(a)(9) requires "sexually explicit conduct," which includes "sexual contact" *as well as* "bestiality; masturbation; lascivious exhibition of the genitals or pubic area of a person or animal; or sadistic or masochistic abuse." 18 U.S.C. § 3509(a)(9).

In this case, the analogous part of the federal statute to the New York statute at question is the "sexual contact" portion. Because sexual contact under the New York statute involves "any touching of the sexual or other intimate parts of a person" and the federal statute defines sexual contact as the touching of an enumerated, limited list of body parts, the state statute is overbroad. *See James*, 522 F.3d 250; *Flores,* 779 F.3d 159. Accordingly, as the offense covers conduct outside the ambit of the sexual abuse of a minor definition, it is not an aggravated felony. *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013).

### B. INA § 237(a)(2)(A)(iii): Aggravated Felony for Failure to Appear before a Court

Failure to appear before a court "pursuant to a court order to answer or dispose of a charge or felony for which a sentence of 2 years' imprisonment or more may be imposed" is an aggravated felony. INA § 101(a)(43)(T). On February 27, 2001, the Respondent was convicted of Bail Jumping in the Second Degree, in violation of NYPL § 215.56(00). *See* DHS Evidence, Tab C (June 6, 2019).

The Second Circuit has held that an offense for Bail Jumping in the First Degree, in violation of NYPL § 215.57, categorically constitutes an aggravated felony for failure to appear pursuant to INA § 101(a)(43)(T). *Perez Henriquez v. Sessions*, 890 F.3d 70 (2d Cir. 2018). The Respondent, through counsel, argues that his conviction is distinguishable because he was convicted for Bail Jumping in the Second Degree, in violation of NYPL § 215.56. *See* Resp't Motion, p. 12 (June 21, 2019). (arguing that NYPL § 215.56 does not categorically constitute an aggravated felony because it does not require a pending indictment, unlike NYPL § 215.57). The Respondent's argument, however, lacks merit because while the categorical approach applies when determining whether an offense relates to the individual's failure to appear before a court, the circumstance specific approach applies to determine whether the failure to appear was "(1) pursuant to a court order (2) to answer to or dispose of a charge of a felony (3) for which a sentence of two years' imprisonment or more may be imposed." *Matter of Garza-Olivares*, 26 I&N Dec. 736 (BIA 2016); *see also Nijhawan v. Holder*, 557 U.S. 29 (2009).

In first applying the categorical approach to determine whether the offense relates to an individual's failure to appear before a court, the Court finds that NYPL § 215.56 categorically involves the failure to appear before a court. According to the jury instructions, one of the two elements necessary to prove Bail Jumping in the Second Degree, is "[t]hat the defendant did not

3

appear personally on the required date or voluntarily within thirty days thereafter." *See Criminal Jury Instructions*, "Bail Jumping in the Second Degree (NYPL § 215.56)" (1993).

Next, applying the circumstance specific approach, the Court looks to any reliable evidence relating to the Respondent's conviction to determine whether the three remaining elements of INA § 101(a)(43)(T) are satisfied. The evidence on record demonstrates that on July 5, 2000, the Respondent, "having been released from custody and allowed to remain at liberty upon bail, and upon his own recognizance, upon the condition that he would subsequently appear personally in connection with a charge against him of committing the felony of Driving While Intoxicated (Sec. 1192(2) and 1192(3) of the Vehicle and Traffic Law), did not appear personally on the required date and did not appear voluntarily within thirty (30) days thereafter." *See* DHS Evidence, Tab C (June 6, 2019). On February 27, 2001, the Respondent pleaded guilty to Bail Jumping in the Second Degree, a Class E Felony, punishable "for a fixed term by the court for at least 3 years, but not to exceed 4 years." *See id.*; NYPL § 70.00(1), 2(e), (3)(b); *see also* NYPL § 215.56 (categorizing bail jumping in the second degree as a class E felony). Given the foregoing, the Court finds that the elements for an aggravated felony for failure to appear before a court, pursuant to INA § 101(a)(43)(T), have been met.

### C. INA § 237(a)(2)(E)(i): Crime of Child Abuse, Child Neglect, or Child Abandonment

"Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable." INA § 237(a)(3)(E). The provisions of INA § 237(a)(3)(E), however, applies to convictions or violations occurring after September 30, 1996. *See* IIRIRA § 350b (noting that the new deportation ground applies only to convictions on or after the date of enactment); *Matter of Gonzalez-Silva*, 24 I&N Dec. 218 (BIA 2007) (holding that a conviction that predated the effective date of INA § 237(a)(2)(E)(i) does not bar cancellation). The Court finds that the Respondent's January 21, 1993 conviction for Sexual Abuse in the Second Degree under NYPL § 130.60(2) does not qualify as a removable offense under INA § 237(a)(3)(E). Accordingly, the Respondent is not removable under INA § 237(a)(3)(E).

### D.  Respondent's Application for Withholding of Removal is Granted

An applicant for withholding of removal bears the burden of establishing that his or her life or freedom would be threatened in the country from which the applicant seeks withholding of removal on account of one of the protected grounds. INA § 241(b)(3); 8 C.F.R. § 1240.8(d).

To qualify for withholding of removal, an applicant must establish a "clear probability" of persecution, meaning that it is "more likely than not" that he or she would be subject to persecution on account of a protected ground. INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) (citing INS v. Stevic, 467 U.S. 407 (1984)). A withholding applicant must "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason" for the persecution he or she will face. Matter of C-T-L-, 25 I&N Dec. 341, 348 (BIA 2010).

4

At the outset, the Court finds, based upon a consideration of the totality of the circumstances, and all relevant factors, that the Respondent testified credibly. *See* INA § 240(c)(4)(C) (listing factors to be considered). In addition, the Court credits the entirety of his written statement. *See* Ex. 4 at 11. The Court also has considered the credible testimony in the form of written statements or reports by the Respondent's sister Judy Touzin (Ex. 4 at 431-33), Dr. Foellmi, Ph. D (Ex. 4 at 57-82) and Michelle Kashan (Ex. 4 at 378-430). *See* Ex. 4 at 431.[1]

The Court also finds that the Respondent has adequately demonstrated that he has not been convicted of a "particularly serious crime" such that he should be precluded from applying for withholding of removal. An alien is barred from withholding of removal if he has been convicted of a particularly serious crime. *See* INA § 241(b)(3). If, as here, the crime is not *per se* particularly serious, this Court must "examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *Matter of N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007); *see also Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008).

The Respondent's criminal history is extensive and is consistent with his claim to have a pervasive alcohol dependency problem. *See* Ex. 4 at 439-95. The most serious of his offenses was his 1993 conviction for Sexual Abuse in the First Degree, which resulted in a six-month prison sentence and six-month probationary sentence. Ex. 4 at 491-95. The Court views this offense, inasmuch as it involved a less-than-fourteen-year-old victim, as a violent offense against a person, which is a significant adverse factor. However, the Court notes that the Respondent was approximately nineteen years old at the time. The Respondent testified that, although he believed the victim was in high school, he did not know her age until he learned it from a police detective. According to the Respondent, he did not "go through with" the attempted sexual intercourse. Given that the Respondent's sentence was not lengthy, given that the Respondent was only 19 years old at the time, and given that the Respondent had not yet been diagnosed with schizophrenia (Ex. 4 at 15-33), the Courts finds that this conviction presents circumstances which should not preclude the Respondent from applying for withholding of removal. The Court also has considered the circumstances of the Respondent's remaining convictions and finds that not one of them presents circumstances showing that it qualifies as a "particularly serious crime."

Accordingly, the Court turns to the merits of the Respondent's persecution claim.

Here, the Respondent bases his persecution claim upon his claimed membership in a particular social group, variously defined as (1) people with mental disorders; (2) criminal deportees with mental disorders; (3) people with mental disorders who exhibit erratic behavior; (4) criminal deportees with mental disorders who exhibit erratic behavior; and (5) people with mental disorders who lack family support and are indigent. *See* Respondent's Memorandum of Law, received September 3, 2019 ("Resp. Br.") at 9-10.

In a claim of persecution on account of membership in a particular social group, an applicant must demonstrate that the group (1) is defined by a share characteristic that is immutable, (2) is distinct within the society in question, and (3) is defined with particularity. *Matter of W-G-*

---

[1] The parties stipulated that these witnesses would testify in conformity with their statements/reports.

File No: A037-888-386

R-, 26 I&N Dec. 208, 210-12 (BIA 2014). The Court finds that the first and second of these groups fail for the reason that they are not defined with sufficient particularity: "people with mental disorders" and "criminal deportees with mental disorders" describe a huge diffuse group of people, the borders of which are unclear. Indeed, "mental disorder" can be used to describe a whole host of ailments, some of which are visible, and some which are not, some of which are serious, and some of which are not. The Court further finds that the first, second, fourth and fifth groups all fail for the reason that these groups have not been shown to be "distinct" within Haitian society as groups.

However, the Court finds the Respondent's third proffered group, "people with mental disorders who exhibit erratic behavior," meets the three-pronged requirement of immutability, social distinction, and particularity. The Respondent's mental disorder, over which he has no control, is something that is fundamental to his identity and "immutable."

Further, the Respondent has adequately demonstrated that this group is "distinct" within Haitian society. The administrative record contains ample evidence that there is a perception in Haiti that someone like the Respondent, who hears and sees voices, and who exhibits erratic behavior, is a member of a group of persons who are shunned and treated differently from the rest of society. According to the State Department, "Persons with mental or developmental disabilities [are] marginalized, neglected, and abused in society." Ex. 4 at 105. The record contains evidence there is a distinct taboo associated with mental illness in Haiti, especially when such illnesses result in erratic behavior, including beliefs that such problems are supernatural in origin. *See, e.g.,* Ex. 4 at 194, 252, 312-28, 358-59, 391 (¶ 51);[2] *see also* Ex. 4 at 280 ("Mental health issues tend to be attributed to supernatural forces [], where three out of four Haitians will see an herbalist or Vodou priests for treatment instead of seeking clinical services."), 298 (regarding the labeling of mentally ill persons as "fou" and permanently dysfunctional), 356 (family shame associated with mental illness). Given this record, the Court finds that the Respondent has met his burden of proof to establish that "people with mental disorders who exhibit erratic behavior" exists as a distinct group within Haitian society.

Finally, the Court finds "people with mental disorders who exhibit erratic behavior" is a group that is sufficiently distinct. It does not, as with some of the other proffered social groups, include less severe mental illness, or illnesses that are not easily recognizable. The group consists of persons who appear to others to be "crazy" or "fou" to others, and the Court finds this boundary to be sufficiently distinct.

---

[2] The Court recognizes that Michelle Karshan is not qualified as a traditional "expert" inasmuch as her knowledge of Haiti is based on experiences there as an envoy and legal adviser, and not on the basis of expertise in any identified field of study. Indeed, the record reveals that her educational qualifications are limited to paralegal training and other training not leading to a college degree *See* Ex. 4 at 378-80, 415-18. Accordingly, the Court accords the Karsham report somewhat diminished weight. However, given that the Federal Rules do not apply in this administrative proceeding, and given that it contains relevant information pertinent to the factual question of conditions in Haiti, it has been considered by the Court in its overall assessment of whether the Respondent has met his burden of proof.

File No: A037-888-386

      That the Respondent is a member of this group is uncontested. Indeed, as far back as 1995, the Respondent was diagnosed with paranoid schizophrenia (Ex. 4 at 17), after an incident in which he was brought to the hospital by police in which he was found "talking to himself" and "laughing to [him]self" and admitted to hearing voices. Ex. 4 at 17-19, 22-23. The Respondent refused treatment at the time. *See* Ex. 4 at 20. According to the Respondent, he spent the subsequent decades self-medicating with alcohol. He recently was recently confirmed to have schizophrenia, alcohol use disorder and major depressive disorder. *See* Ex. 4 at 57-82.

      The record adequately establishes that there is a clear probability that the Respondent will be harmed on account of his status as a member of the group "people with mental disorders who exhibit erratic behavior." The record reveals that it is "common" for such persons to be locked up in hospital psychiatric wards. Ex. 4 at 312. The conditions in such institutions are abominable. Ex. 4 at 217. The record adequately reflects that the stigma associated with mental illness in Haiti leads to a marginalization that results in the death of mentally ill persons who have lost the support of their family. The Respondent's entire extended family is here in the United States. The record also reveals that such marginalization would be at the hand of the government or an entity that the government is unable or unwilling to control. Under the particular circumstances of this case, the Court finds that it is more likely than not that the Respondent will be persecuted if he is forced to return to Haiti.

      The Court does not reach the Respondent's claim for relief under the Torture Convention.

7

File No: A037-888-386

Based on the foregoing analysis, the following orders will be entered:

**ORDER**

**IT IS HEREBY ORDERED** that Respondent's motion to terminate proceedings is **DENIED**;

**IT IS FURTHER ORDERED** that the charge pursuant to INA § 237(a)(2)(A)(iii) (under INA § 101(a)(43)(A) is **NOT SUSTAINED**;

**IT IS FURTHER ORDERED** that the charge pursuant to INA § 237(a)(2)(A)(iii) (under INA § 101(a)(43)(T) is **SUSTAINED**; and

**IT IS FURTHER ORDERED** that the charge pursuant to INA § 237(a)(2)(E)(i) is **NOT SUSTAINED**;

**IT IS FURTHER ORDERED** that the Respondent is ordered removed from the United States to Haiti; and

**IT IS FURTHER ORDERED** that the Respondent's application for withholding of removal pursuant to INA §241(B)(3) is **GRANTED**, and Respondent's removal to Haiti is hereby **WITHHELD**.

9/20/19
Date

Margaret M. Kolbe
Immigration Judge

8