**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **JEAN ROSEMOND,**<br><br>                **Petitioner,**<br><br>    *- against -*<br><br>**THOMAS DECKER, et al.,**<br><br>                **Respondents.** |

**19CV9657 (NSR)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO:  THE HONORABLE NELSON S. ROMÁN, U.S.D.J.**

Petitioner Jean Rosemond brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. 2241, challenging his prolonged detention in ICE custody as a violation of the Due Process Clause of the Fifth Amendment.  Docket # 1 ("Petition").  To date, Rosemond has been detained for almost exactly one year without a bond hearing.  Rosemond seeks the issuance of a writ ordering Respondents to release him unless they provide him, within seven days of the Court's order, with a constitutionally adequate, individualized hearing before an impartial adjudicator at which the Department of Homeland Security ("DHS") bears the burden of establishing by clear and convincing evidence that his continued detention is justified and the adjudicator considers alternatives to detention and Rosemond's ability to pay.  Respondents oppose the Petition.  Docket ## 9-11.  For the reasons that follow, I conclude and respectfully recommend that Your Honor should conclude, that the Petition should be granted.

Furthermore, on March 18, 2020, Rosemond filed an emergency motion for his immediate interim release pursuant to Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001), due to his "serious medical conditions and resulting vulnerability to severe illness or death if infected by the coronavirus . . . while in immigration detention[.]"  Docket # 16 ("Emergency Motion") at 1. Rosemond "has been diagnosed with a number of significant medical issues, including

1

schizophrenia, major depressive disorder, alcohol abuse disorder, and low cognitive functioning," id. at 2, and he contends that his "acute mental health conditions render him particularly vulnerable and more susceptible to severe illness after contracting COVID-19 as they increase his risk of infection and make it more difficult for him and jail staff to treat any physical health condition, which would then exacerbate his mental illnesses." Id. at 6. However, Rosemond has not established that his mental illnesses render him uniquely vulnerable to COVID-19. Thus, for the reasons that follow, I conclude and respectfully recommend that Your Honor should conclude, that Rosemond is not entitled to immediate interim release under Mapp.

As noted below, the parties have consented to shorten (to seven days) the statutory 14-day time period for filing objections to this Report and Recommendation and, in light of the issues discussed herein, this Court urges them to make any such filings even more quickly.

## BACKGROUND

### I.      Factual Background[1]

At the time of the filing of his Petition, Rosemond was a 47 year-old Haitian national, who has been a Lawful Permanent Resident ("LPR") since he came to the United States as a 10-year old in 1983. Petition ¶¶ 2, 19; see also Samuel Decl. (Docket # 11) ¶¶ 3-4. Rosemond has lived with his mother and siblings in Spring Valley, NY, since his lawful admission to the United States. Petition ¶¶ 2, 20. His immediate family—his mother and six siblings—are all U.S. citizens. Id. Rosemond suffers from schizophrenia, major depressive disorder, and alcohol abuse disorder. Id. ¶ 22. His first recorded symptoms related to his mental illness occurred in 1995, and they included auditory hallucinations, talking to himself, and laughing to himself. Id.

---

[1] Unless otherwise noted, the facts summarized herein are taken from the Petition and evidence submitted by the parties.

Rosemond was hospitalized about four times in response to mental health crises, but he managed his symptoms not only through his relationship with his family, but also through alcohol use.  Id. Rosemond was arrested several times as a result of his alcohol use and was convicted of various violations of New York Vehicle and Traffic Law ("VTL") § 1192.  Id. ¶ 23.[2]

DHS contends that two of Rosemond's convictions render him removable:  his 1993 conviction for violation of New York Penal Law ("NYPL") § 130.60(2), an A misdemeanor for sexual abuse in the second degree,[3] and his 2001 conviction for violation of NYPL § 215.56, an E felony for bail jumping in the second degree.[4]  Id. ¶ 24.  Rosemond's last arrest occurred in

---

[2] In addition to several DWI offenses, Petitioner was arrested and charged with a variety of other crimes as well, as evidenced by his rap sheet.  See Docket # 9 ("Return to Pet.") Ex. 1; Samuel Decl. ¶¶ 5-14.

[3] According to Rosemond's rap sheet, he was arrested on February 25, 1992, and charged with rape in the second degree and sexual abuse in the second degree.  Return to Pet. Ex. 1.  On January 21, 1993, he pled guilty to a charge of sexual abuse in the second degree: sexual contact with a person less than 14 years old, a class A misdemeanor, in satisfaction of the charges, and was sentenced to a term of six months' imprisonment.  Id.; Samuel Decl. ¶ 5.

[4] As explained by Respondents,

> On June 18, 2000, Rosemond was arrested by the Ramapo Town Police for DWI:  previous conviction of a designated offense within 10 years, operating a motor vehicle with .10 of 1% alcohol-2nd offense, and aggravated unlicensed operation of a motor vehicle in the first degree. Samuel Decl. ¶ 12.  On July 5, 2000, a bench warrant for Rosemond's arrest was issued.  Id.  On January 3, 2001, Rosemond was charged with bail jumping in the second degree in connection with this bench warrant. Id.  The same day, Rosemond pleaded guilty in the Rockland County Superior Court to bail jumping in the second degree and operating a motor vehicle with .10 of 1% alcohol-2nd offense in resolution of those charges. Id.; Ex. 1.  On February 27, 2001, Rosemond was sentenced to one year of imprisonment for each offense, to run concurrently, and he was assessed a fine in the amount of $1,000 for the motor vehicle offense.  Samuel Decl. ¶ 12.

Docket # 10 ("Mem. of Law in Opp'n") at 4.

August, 2017, and he pled guilty to violating VTL § 1192(3) in January, 2019, and was sentenced to a conditional discharge and fine. Id. ¶ 25; see also Return to Pet. Ex. 1; Samuel Decl. ¶ 14.

Almost two years after his last arrest, Rosemond received a letter from ICE asking that he contact the agency for an appointment. Petition ¶¶ 3, 26. Rosemond reported to ICE's Newburgh, NY office on April 2, 2019, accompanied by his mother and sister. Id. On that day ICE both detained Rosemond, placing him in ICE custody at the Orange County Jail, and served him with a Notice to Appear ("NTA"), on a date "to be set." Id. ¶¶ 5, 26-27 & Exs. A (NTA)[5], C (Notice of Custody Determination).[6] The NTA charges Rosemond as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii)[7] based on his convictions for two aggravated felonies, namely, the convictions for sexual abuse of a minor and bail jumping. Id. ¶ 27 & Ex. A. ICE commenced removal proceedings against Rosemond on April 4, 2019, by serving the NTA on the Varick Street Immigration Court, the detained docket in New York, NY. Samuel Decl. ¶ 16. Rosemond has been detained at the Orange County Jail without a bond hearing since being taken into custody on April 2, 2019. Petition ¶¶ 3, 40-41.

---

[5] It should be noted that the last two pages included in the exhibit with the NTA which was served on Rosemond on April 2, 2019, are a Form I-261, dated and served on Rosemond on July 26, 2019, which charged Rosemond with an additional ground of removability related to his conviction for sexual abuse pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) (related to a crime of child abuse, child neglect, or child abandonment). See Petition ¶ 34.

[6] The Notice of Custody Determination states that Rosemond is going to be detained by DHS pending a final administrative determination in his removal proceedings.

[7] "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

The relevant timeline of Rosemond's removal proceedings is not materially disputed and is set forth in detail in the parties' submissions, familiarity with which is assumed for purposes of this Report and Recommendation, and which will be addressed herein only as relevant to the Petition and the pending Emergency Motion.  Notably, however, the Immigration Judge ("IJ") issued a written decision on September 20, 2019, finding that Rosemond was removable based on only one of his convictions, but also finding that his removal should be withheld since Rosemond showed a "clear probability" of persecution if he was removed to Haiti due to his significant mental health conditions.  Id. ¶¶ 38-39 & Ex. B.  Both sides filed appeals to the Board of Immigration Appeals ("BIA"), and on March 12, 2020, the BIA issued its decision.  See Docket # 16-1 ("BIA Decision").

The BIA Decision dismissed Rosemond's appeal regarding his removability, finding that Rosemond is removable on the charge of bail jumping in the second degree, which qualifies as an aggravated felony.  Id. at 1-3.  However, in response to DHS's appeal, the BIA upheld the IJ's determination that Rosemond had met his burden of establishing that he is a member of a "particular social group of people with mental disorders who exhibit erratic behavior" and that it is more likely than not that Rosemond would suffer persecution if he is returned to Haiti, as he "will likely be institutionalized and suffer harm rising to the level of persecution inside the institution."  Id. at 3-4.  Nonetheless, the BIA went on to explain that "[t]o qualify for withholding of removal, [Rosemond] must establish not only that he will suffer harm rising to the level of persecution, but that the alleged persecutor will be motivated to harm him based on his protected ground."  Id. at 4.  It found that the IJ "did not make sufficient factual findings regarding the motive of those committing the abuses," or "sufficient factual findings regarding whether the harm [Rosemond] fears will be perpetrated by the Haitian government or by private

individuals the government is unable or unwilling to control." Id. Accordingly, the BIA

remanded the matter to the IJ "for further fact finding and analysis regarding the issues of nexus

and government involvement in the feared persecution," adding that the IJ "should further

consider any other relief nor [sic] previously addressed." Id. at 4-5.

Petitioner states in his Emergency Motion that because of the BIA's remand of his case,

his removal proceedings "will continue indefinitely, as he must await another court date, further

adjudication by the Immigration Judge, and another potential appeal by ICE, all at a time when

the Immigration Courts are barely functioning in response to the current global pandemic."

Emergency Motion at 1.

**II.     Procedural Background**

On October 18, 2019, Rosemond filed his habeas petition pursuant to 28 U.S.C. § 2241,

challenging his current immigration detention as unlawful and seeking an order requiring ICE to

release him unless Respondents provide him with a bond hearing within seven days of the date

of the Court's order. See generally Petition. The Petition asserts that Rosemond's prolonged

detention under 8 U.S.C. § 1226(c)[8] violates his procedural due process rights. Id. at ¶¶ 64-70.

The Petition was fully briefed on November 25, 2019, and Rosemond submitted supplemental

authority on February 18, 2020.

On March 18, 2020, Rosemond, who has a number of mental health issues, filed a motion

seeking immediate interim release pending the resolution of his habeas petition because of the

particular risk that the COVID-19 pandemic poses to his health. See Emergency Motion.

---

[8] Section 1226(c) provides for mandatory detention: "The Attorney General shall take into
custody any alien who . . .is deportable by reason of having committed any offense covered
in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. 1226(c)(1)(B)
(emphasis added).

6

Respondents opposed Rosemond's motion, Docket # 18 ("Rsp'ts' Response").  The parties appeared telephonically for oral argument on both the Petition and the Emergency Motion on March 26, 2020.

## DISCUSSION

I.    **Petitioner's Emergency Motion for Immediate Interim Release**[9]

    A.    **The Court's Authority to Grant the Requested Immediate Relief**

        The authority of this Court to grant the immediate relief requested is not well-established. Pursuant to 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief[.]" Magistrate Judges in the Southern District of New York have cited Mapp for the proposition that federal courts possess the "inherent authority to admit to bail individuals properly within their jurisdiction." Boddie v. N.Y. State Div. of Parole, No. 08-CV-9287 (LAP)(DF), 2009 WL 1531595, at *1 (S.D.N.Y. May 28, 2009) (quoting Mapp, 241 F.3d at 226) (internal quotation marks omitted).  These judges do not, however, undertake an analysis in their opinions of whether the Court's "inherent authority" applies to magistrate judges, whose authority comes not from Article III of the U.S. Constitution but from statute, or whether immediate interim release is properly considered to be a form of "injunctive relief."

        A magistrate judge in this District who was recently confronted with this question found that "[r]ecent circumstances have demonstrated, with little room for doubt, the similarity between requiring a habeas respondent to release a petitioner immediately, under Mapp, and granting injunctive relief.  See Basank v. Decker, No. 20cv2518 (AT), at Dkt. 11 (S.D.N.Y.

---

[9] The Court is unable to include citations to, but is aware of, the rapidly-expanding body of case law addressing motions for immediate interim release in light of the COVID-19 pandemic.

Mar. 26, 2020) (granting a temporary restraining order requiring immediate release of immigration detainees from county jails, in view of the presence of COVID-19 in those jails)." Arana v. Barr, 19cv7924 (PGG)(DF), at Docket # 22 (S.D.N.Y. Mar. 27, 2020).  That magistrate judge concluded "that magistrate judges lack authority, under 28 U.S.C. § 636(b), to act directly on applications for Mapp relief, absent consent of the parties, see 28 U.S.C. § 636(c)."  Id. at 11. Another magistrate judge in this District also recently confronted with this question noted, "Courts addressing magistrate judge authority in the context of habeas petitions have suggested that these judges' authority is limited.  See, e.g., Reynaga v. Camisa, 971 F.2d 414, 416 (9th Cir. 1992) (finding that a magistrate judge acted beyond his authority where he ordered a § 1983 action stayed until plaintiff exhausted his state remedies)."  Umana Jovel v. Decker, 20-CV-0308 (GBD)(SN), at Docket # 26 (S.D.N.Y. Mar. 24, 2020).  Additionally, in Umana, as the order of reference from the district judge "does not clearly indicate that requests for immediate relief are within this Court's jurisdiction," the magistrate judge elected to address the petitioner's motion for immediate interim release by way of a Report and Recommendation.  Id.  Following the reasoning of both Arana and Umana, this Court likewise concludes that it should decide the motion for immediate interim relief by way of a Report and Recommendation.

**B.     Mapp applies in § 1226(c) Mandatory Detention Cases**

Respondents further dispute that the Court has authority under Mapp to release Rosemond because in Mapp the petitioner was not subject to mandatory detention under § 1226(c) but was instead detained pursuant to 8 U.S.C. § 1231, under which detention is mandatory only for an initial period of 90 days, and discretionary thereafter.  Rsp'ts' Response at 3-6.  Respondents argue that this difference in statutes was crucial to the Second Circuit decision in Mapp:  because Mapp was not subject to mandatory detention, the district court's authority

8

was not limited by a specific statutory provision, and thus it retained the authority to grant bond pending the habeas proceeding.  Id. at 4-5.  Respondents argue that because § 1226(c) provides for mandatory detention, the circumstances in Mapp that gave rise to the district court's power to release an alien on bond are inapposite.  Id. at 5-6.

The Court finds Respondents' position to be unavailing.  The question of whether there are limits to the Court's inherent powers to release a habeas petitioner to bond when held under § 1226(c) was not before the Second Circuit in Mapp.  See 241 F.3d at 229 ("While the government's discussion of recent statutory inroads on judicial review of INS decisions provides evidence of the breadth of congressional power in this arena, it is of little help with respect to the particular question before us.").  Furthermore, courts in this District have issued interim relief to § 1226(c) detainees.  See, e.g., Kiadii v. Decker, No. 18-CV-1584 (AT), 2018 WL 10456549, at *1-2 (S.D.N.Y. Mar. 2, 2018) (granting release of person held under § 1226(c) pursuant to inherent authority under Mapp).  Accordingly, the Court proceeds to analyze whether Rosemond's request satisfies the standard for relief set out in Mapp.

### C.    Applying the Mapp Standard to Rosemond's Request for Immediate Release

The Second Circuit has established that a habeas petitioner should be granted bail during the pendency of his or her habeas proceeding when "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective."  Oster v. United States, 584 F.2d 594, 596 n.1 (2d Cir. 1978) (internal quotation marks and citations omitted).  This power "is a limited one, to be exercised in special cases only."  Mapp, 241 F.3d at 226.  In making the determination whether to grant bail pursuant to Mapp, courts consider:  (i) whether the habeas petition raises substantial claims, and (ii) whether extraordinary circumstances exist that make the grant of bail necessary in order to make the habeas remedy

9

effective.  See, e.g., Nikolic v. Decker, No. 19-CV-6047-LTS, 2020 WL 1304398, at *1

(S.D.N.Y. Mar. 19, 2020); Reid v. Decker, 2020 WL 996604, at *13 (S.D.N.Y. Mar. 2, 2020).[10]

Below, the Court finds that the Petition presents a substantial claim and recommends that the

Petition be granted and a bond hearing be held; as such, the Court finds that the first Mapp factor

is met.

        With respect to the second factor, courts have typically found that where the habeas

petition "seeks only a constitutionally-adequate bond hearing . . . because the Court has granted

that relief, immediate release is not necessary to make the habeas writ effective."  Fernandez

Aguirre v. Barr, 19-CV-7048 (VEC), 2019 WL 3889800, at *4 (S.D.N.Y. Aug. 19, 2019).

Indeed, the relief Rosemond seeks by way of his habeas petition—a bond hearing (or his release

if Respondents fail to provide such a bond hearing)—and the relief he seeks in the Emergency

Motion are one and the same.  Furthermore, the Court recommends the grant of the relief sought

in the Petition.  Thus, the grant of immediate interim release is unnecessary to make the habeas

remedy effective.  See Reid, 2020 WL 996604, at *13 (in case involving petition challenging

immigration detention under 8 U.S.C. § 1226(c) and seeking immediate release or a bond

hearing, court denied petitioner's application for immediate release under Mapp:  "The Court is

truly sympathetic to Reid's situation.  However, particularly in light of the fact that the Court is

granting the relief sought in Reid's Petition, Reid has not established the existence of

---

[10] In determining whether to grant bail pursuant to Mapp, some courts consider three factors:  (i) whether substantial claims are set forth in the habeas corpus petition; (ii) whether the petitioner has demonstrated a likelihood of success on the merits of his or her petition; and (iii) whether there are extraordinary circumstances attending the petitioner's situation which would require release on bail in order to make the writ of habeas corpus effective.  See Boddie, 2009 WL 1531595, at *1.  Whether considering the two-factor standard set forth above or the three-factor standard, this Court's determination of the Emergency Motion would be the same.

extraordinary circumstances that make the grant of bail necessary to make the habeas remedy effective.").

Other courts in this Circuit have found that a petitioner's "health conditions . . . constitute exceptional circumstances setting his case apart and making bail necessary to make the habeas remedy effective." D'Alessandro v. Mukasey, No. 08-CV-914 (RJA)(VEB), 2009 WL 799957, at *4 (W.D.N.Y. March 25, 2009), modified, 2009 WL 10194901 (W.D.N.Y. Mar. 26, 2009), aff'd, 2009 WL 931164 (W.D.N.Y. Apr. 2, 2009).  Likewise, in Umana, the court found "extraordinary circumstances" meriting relief under Mapp where the petitioner "raised serious concerns that his health condition, which may increase his vulnerability to COVID-19, would render meaningless any bond hearing that will be held once the immigration courts have returned to their normal operating procedures." Umana at 9.  The petitioner represented to the court that he suffered from epilepsy, which he managed by taking drugs that "may suppress the immune system in certain patients, making him especially vulnerable to serious illness if he contracts COVID-19." Id. at 9-10.  In Arana, the court found "that the COVID-19 outbreak, its already-reported presence in the Bergen County Jail where Petitioner is housed, Petitioner's underlying health conditions, and the length of time it may reasonably take for a bail hearing to be scheduled together give rise to extraordinary circumstances that warrant interim release in order to ensure the effectiveness of habeas relief in this case." Arana at 16.  The petitioner in Arana reported to the court that "he is over 60 years of age and has a number of co-morbidities, including, inter alia, asthma, psoriasis (which is a type of auto-immune disorder), and obesity." Id. at 17 (footnote omitted).  The court took "judicial notice of the fact that individuals of advanced age, with co-morbidities, are at significant risk of severe or fatal responses to the virus." Id.

11

In this case, although the Court finds that there is evidence that Rosemond suffers from significant mental health issues, <u>see</u> Petition Ex. B ("IJ Decision") at 6-7 (finding that Rosemond is a member of the group "people with mental disorders who exhibit erratic behavior" and noting that Rosemond "was recently confirmed to have schizophrenia, alcohol use disorder and major depressive disorder"), there is no evidence that his mental disorders alone make him particularly vulnerable to COVID-19.[11]  Rather, as Rosemond points out, during his time at the Orange County Jail, "he has not received adequate treatment for his severe mental disorders and continues to deteriorate without medication and proper care."  Emergency Motion at 2. Rosemond cites the Declaration of Dr. Jaimie Meyer, which states, "Failure to provide adequate mental health care [to those with underlying chronic mental health conditions], as may happen when health systems in jails and prisons are taxed by COVID-19 outbreaks, may result in poor health outcomes.  Moreover, mental health conditions may be exacerbated by the stress of incarceration during the COVID-19 pandemic, including isolation and lack of visitation." Docket # 16-2 ("Meyer Decl.")  ¶ 30.  However, during oral argument, Rosemond's counsel conceded that Dr. Meyer has never met Rosemond and that her opinion is not specific to Rosemond's mental health condition.  Accordingly, it is of limited value in the context of the Emergency Motion.  Moreover, although her opinion supports the finding that the pandemic has worsened the ability to provide adequate mental health care and thus exacerbated Rosemond's

---

[11] Rosemond's counsel mentioned for the first time during oral argument that Rosemond also suffers from asthma, but there is no evidence in the record of this condition.

mental health condition, it does not support the finding that Rosemond's mental health condition increases his risk of harm from the virus itself.[12]

The Court understands from representations made during oral argument that the pandemic has posed challenges to usual operations at the Varick Street Immigration Court, but Respondents' counsel noted that it is still open for business with regard to the detained docket and that Rosemond has his next appearance in Immigration Court on April 2, 2020, presumably in connection with the remand of his proceedings by the BIA.  Nonetheless, Rosemond submitted an additional letter in support of the Emergency Motion on March 30, 2020, noting that "[d]ue to the pandemic-related dysfunction at the Varick Street Immigration Court, Respondents are unlikely to be able to provide Mr. Rosemond with an effective remedy should this Court grant his habeas petition."  Docket # 19 ("March 30 Ltr.") at 1.  Indeed, circumstances

---

[12] The World Health Organization reports cited by Rosemond in the Emergency Motion, id. at 6 n. 22, and mentioned by his counsel during oral argument, do not support the assertion that his mental illness increases his risk of contracting COVID-19.  See, e.g., https://apps.who.int/iris/bitstream/handle/10665/275718/9789241550383-eng.pdf,

Management of physical health conditions in adults with severe mental disorders, World Health Organization (2018) at 10  ("In addition to causing a large proportion of morbidity, mental disorders – especially severe mental disorders (SMD) – are linked with poorer health outcomes and increased mortality.  SMD are defined as a group of conditions that include moderate to severe depression, bipolar disorder, and schizophrenia and other psychotic disorders. . . . Infectious diseases such as HIV/AIDS also contribute to the high rates of premature death amongst people with SMD, as do other infectious diseases such as tuberculosis and hepatitis B and C."); http://www.euro.who.int/__data/assets/pdf_file/0005/249188/Prisons-and-Health.pdf,

Prisons and Health, World Health Organization (2014) at 73 ("The different elements do not exist as separate entities but interact dynamically, as shown in the case study of the dynamics between infections and mental illness described by Rutherford . .  People with mental illness are more likely to be infected with bloodborne viruses because of risky behaviour such as homelessness, rapidly changing moods and multiple partners.").

are changing daily as the pandemic evolves, and Rosemond's submission explains that the

detained docket has been transferred from the Varick Street Immigration Court in New York to

the Fort Worth Immigration Adjudication Center in Fort Worth, Texas, from March 27, 2020,

through April 10, 2020.  Id.  Because this Court is proceeding by way of a Report and

Recommendation, and because there is a seven-day agreed upon period for objections, it is

highly unlikely that the issue of Rosemond's entitlement to a bond hearing will be resolved

before April 10, 2020.  The Court declines to base its recommendation on supposition regarding

the circumstances that might exist at some future point in time.  Rather, the Court cannot

conclude at this point in time that Rosemond's immediate interim release is necessary to make

Rosemond's ultimate relief of a bond hearing effective.  Furthermore, any concerns regarding the

ability to provide the ultimate relief of a bond hearing, or the continued violation of Rosemond's

rights to due process in the absence thereof, are addressed by this Court's recommendation

regarding the grant of Rosemond's habeas petition, that if a bond hearing is not conducted as

ordered, then Respondents should be ordered to release Rosemond.

**II.    Rosemond's Habeas Petition**

**A.  Jurisdiction Over Habeas Petitions**

Section 2241 of Title 28 of the United States Code "authorizes a district court to grant a

writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or

laws or treaties of the United States.' "  Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003)

(quoting 28 U.S.C. § 2241(c)(3)).  This jurisdiction includes the power to hear claims by non-

citizens challenging their detention as unconstitutional.  See Demore v. Kim, 538 U.S. 510, 516-

17 (2003); see also Reid, 2020 WL 996604, at *5.  Neither party challenges the Court's

jurisdiction over the Petition.

14

### B. Detention Pursuant to 8 U.S.C. § 1226(c)

The Immigration and Nationality Act ("INA") provides for the detention of non-citizens pending removal proceedings.  See Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 539 (S.D.N.Y. 2014).  Generally, immigration detention is authorized by § 1226(a), which grants DHS discretion to either detain a non-citizen or release him or her on a bond.  8 U.S.C. § 1226(a).  But certain classes of aliens, specifically those who have committed particular criminal or terrorist acts, are subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).

Until recently, the law in this Circuit was that a non-citizen subject to mandatory detention pursuant to § 1226(c) "must be afforded a bail hearing before an immigration judge within six months of his or her detention" to "avoid the constitutional concerns raised by indefinite detention." Lora v. Shanahan, 804 F.3d 601, 616 (2d Cir. 2015).  In 2018, following its decision in Jennings v. Rodriguez, 138 S. Ct. 830 (2018), the Supreme Court vacated and remanded Lora.  See Shanahan v. Lora, 138 S. Ct. 1260 (2018).  That case's six-month bright-line rule no longer controls.  See Dukuray v. Decker, No. 18-CV-2898 (VB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018).

Since Jennings, courts in this District have instead applied the fact-based five-factor test set forth in Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018), to determine whether a petitioner's continued detention pursuant to § 1226(c) without a bond hearing has become "unreasonable." Id.; see Dukuray, 2018 WL 529130, at *3 ("Courts in the Southern District of New York have overwhelmingly adopted Sajous v. Decker's fact-based inquiry.").

In Sajous, the court considered five factors to determine whether continued detention without a bond hearing violates due process:  (i) the length of time the petitioner has been

15

detained; (ii) whether the petitioner is responsible for the delay; (iii) whether the petitioner has asserted defenses to removal; (iv) whether the petitioner's civil immigration detention exceeds the time he or she spent in prison for the crime that rendered him or her removable; and (v) whether the facility in which the petitioner is detained is "meaningfully different from a penal institution for criminal detention."  2018 WL 2357266, at *10-11.

### C.  Rosemond's Detention Without a Bond Hearing Since April 2, 2019, is Unconstitutional

#### 1.  Length of Detention

The "first, and most important, factor" when assessing the reasonableness of a non-citizen's continued detention under § 1226(c) is the length of time he or she has already been detained.  Sajous, 2018 WL 235726, at *10.  At this point, Rosemond has been detained for about a year.  This is significantly longer than the six months after which courts have found that detention is "more likely to be 'unreasonable.' "  Sajous, 2018 WL 2357266, at *10 (holding detention for eight months without a bond hearing to be unconstitutional); see also Reid, 2020 WL 996604, at *9 (thirteen months' detention without a bond hearing was unreasonable); Dukuray, 2018 WL 5292130, at * 4 (ten months' detention without a bond hearing was unreasonable).[13]  The BIA has just remanded the proceedings for further fact-finding and analysis.  As Rosemond contends in his emergency motion, his removal proceedings (and by implication, his detention) "will continue indefinitely."  Emergency Motion at 1.  This factor

---

[13] Although Respondents' counsel argued that in Rosemond's case, his period of detention without a bond hearing is not unreasonable, he conceded during oral argument that there is case law finding that detention periods of less than one year are unreasonable.

16

weighs in favor of granting Rosemond relief.[14]

### 2. Whether Rosemond is Responsible for the Delay

The second <u>Sajous</u> factor is whether the petitioner is responsible for the delay.  <u>See</u> 2018 WL 2357266, at *10.  The length of a petitioner's detention is less likely to be deemed unreasonable if the petitioner requested several continuances or otherwise delayed the immigration proceedings.  <u>Id.</u>  "[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute."  <u>Id.</u> (quoting <u>Chavez-Alvarez v. Warden York Cty. Prison</u>, 783 F.3d 469, 476 (3d Cir. 2015)) (internal quotation marks omitted).  But if immigration officials have caused the delay, this factor weighs in favor of finding continued detention unreasonable.  <u>Id.</u>

Rosemond cites several delays in the proceedings caused by Respondents, <u>see</u> Petition ¶ 67,[15] and at oral argument, Respondents conceded that Respondents were responsible for some of the delays.  Nonetheless, Respondents still claim that Rosemond caused delays, and in their opposition papers they note that "[d]uring the course of his removal proceedings, Rosemond

---

[14] "Other courts have also considered whether the petitioner's detention is near conclusion." <u>Dukuray</u>, 2018 WL 5292130, at * 4 (citation omitted).  In light of the remand of Rosemond's removal proceedings by the BIA, there is no evidence that his detention will end any time soon.

[15] Petitioner cites several instances of delays caused by Respondents:  (i) Respondents detained Petitioner for over four weeks before presenting him for his first hearing in Immigration Court; (ii) DHS failed to produce Rosemond on May 10, 2019, due to VideoTeleConference ("VTC") issues; (iii) DHS failed to file evidence in support of removability for more than two months after Petitioner was detained; (iv) DHS's policy to produce Rosemond exclusively by VTC prevented Rosemond from reviewing evidence filed by DHS in court (although the statute and regulations provide that he has a right to examine such evidence); (v) DHS failed to reply in a timely fashion to Petitioner's motion to terminate; (vi) DHS failed to complete Rosemond's biometrics by the time of his first individual hearing on September 10, 2019; and (vii) DHS waited over three weeks to file its Notice of Appeal to the BIA.  Petition ¶ 67.

requested a continuance, filed an untimely motion to terminate proceedings[16] (which was denied), filed and pursued an application for relief from removal at several individual hearings, which were continued to allow him to present his own testimony and the testimony of additional witnesses,[17] and cross-appealed the immigration judge's September 20, 2019 decision to the BIA, all of which has contributed to delaying the ultimate conclusion of his proceedings."  Mem. of Law in Opp'n at 19.  Respondents therefore claim that "the length of  Rosemond's removal proceedings, and hence detention, is largely a function of the process Rosemond is being provided."  Id.

---

[16] It is worth noting that the motion was filed only a week late.  See Samuel Decl. ¶¶ 20-21 (motion was due June 14, 2019, but was filed on June 21, 2019).  In his reply papers, Rosemond explains that the attorney who had been representing him left The Bronx Defenders shortly after June 7, 2019, and his current counsel was under the impression that the motion to terminate was due on June 21, 2019, instead of June 14, 2019, the date set by the IJ.  Gleason Decl. ¶¶ 7-10. Moreover, DHS filed its response to the motion two weeks late.  Petition ¶¶ 32-33; Samuel Decl. ¶ 23.

[17] Again, the individual hearing was continued for only eight days, from September 10, to September 18, 2019, and although Respondents imply that this was Rosemond's fault, they concede that ICE's failure to complete the necessary security checks likewise prevented the hearing from being concluded on September 10.  See Samuel Decl. ¶ 25 (""In considering the potential necessity for safeguards [in eliciting testimony from Rosemond], the Immigration Judge proposed taking testimony from a mental health expert first before potentially taking testimony from Rosemond.  Testimony from Rosemond and his witnesses could not be completed at this hearing and ICE did not have the security checks necessary to conclude the case.  Consequently, the Immigration Judge adjourned the case to another individual hearing to be held September 18, 2019 to hear additional testimony in support of Rosemond's application for relief from removal and for ICE to complete its security checks of Rosemond.") (emphases added); but see Gleason Decl. ¶¶ 17-18 ("The hearing . . . began [on September 10, 2019,] with Mr. Rosemond's direct examination.  The IJ interrupted Mr. Rosemond only a few minutes into his testimony.  The IJ asked DHS whether Mr. Rosemond's biometrics were complete.  Counsel for DHS said that they had not yet run the required security checks.  The IJ did not want to continue the proceedings without completed biometrics.  I proposed that we continue with the testimony in order to complete as much as possible. . . The IJ refused and asked DHS to complete biometrics.  DHS was unable to complete biometrics that morning and the IJ decided to continue the case until September 18, 2019.").

18

However, "pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged." Hernandez v. Decker, 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). Furthermore, there is no evidence or argument that Rosemond's conduct was dilatory or an effort to "gam[e] the system." Sajous, 2018 WL 2357266, at *10. This factor weighs in favor of granting Rosemond relief.

### 3. Defenses to Removal

The third Sajous factor is whether the detainee has asserted defenses to his or her removal. If he or she has asserted no defenses, "he [or she] will presumably be removed from the United States eventually," and the detainee's continued detention is therefore more reasonable. 2018 WL2357266, at *11. Here, Rosemond states,

> [A]lthough Respondents make much of Mr. Rosemond's pursuit of relief from removal, see Resp. Opp. at 19-20, they have not argued, either in Immigration Court or in their opposition here, that Mr. Rosemond's "defenses raised [ ] are frivolous," Sajous, 2018 WL 2357266 at *11. Nor have Respondents provided or alleged evidence that Mr. Rosemond's defenses from removal are a form of "bad-faith delay," Hernandez [v. Decker], 2018 WL 3579108 at *10 [(S.D.N.Y. July 25, 2018).] [citation omitted].

Docket # 12 ("Reply Mem. of Law") at 9. Indeed, Rosemond notes that Respondents cannot argue that his defenses are frivolous or in bad faith "as evidenced by the IJ's well-reasoned decision to grant him relief and dismiss two of the three charges alleged by DHS." Id. Moreover, during oral argument Respondents conceded that Rosemond's defenses to removal are not frivolous. This factor weighs in favor of granting Rosemond relief.

### 4. Time in Prison for the Crime that Rendered Him Removable

The next factor to be considered is whether the time the petitioner has spent in immigration detention exceeds the time he or she spent in prison for the crime that rendered him

or her removable under § 1226(c).  Sajous, 2018 WL2357266, at *11.  Rosemond notes that his

only allegedly removable conviction occurred in 2001 for which he served one year in prison.

Petition ¶ 69.  Respondents claimed at oral argument that because the length of Rosemond's

sentence and his time in immigration custody are roughly the same, this factor weighs against

granting Rosemond relief.  However, because Rosemond's time in detention will soon exceed

one year, especially if he remains in detention pending the continuation of his removal

proceedings on remand from the BIA (including any further appeals that might thereafter ensue),

this factor weighs in favor of granting Rosemond relief.

### 5.       Difference Between the Current Facility and a Penal Institution

The fifth factor courts consider is whether the facility for immigration detention is

meaningfully different from a penal institution for criminal detention.  Sajous, 2018 WL

2357266, at *11.  Rosemond is being held in the Orange County Jail, which is used for criminal

detention.  Petition ¶ 69.  Respondents conceded this point at oral argument.  This factor weighs

in favor of granting Rosemond relief.

Considering all of the Sajous factors, I conclude, and respectfully recommend that Your

Honor should conclude, that Rosemond's continued detention without a bond hearing since April

2, 2019, is unreasonable and unconstitutional, and that he is entitled to a bond hearing.

### E.  The Procedural Requirements of Rosemond's Bond Hearing

The Petition states that Rosemond's bond hearing must include the procedural safeguards

of placing the burden of proof upon DHS to establish by clear and convincing evidence that he

poses a risk of flight or a danger to the community.  Petition ¶¶ 60-63 & Prayer for Relief.  In

addition, the IJ must meaningfully consider the ability to pay a bond and alternative conditions of

release.  Id. ¶ 60 & Prayer for Relief.   Respondents oppose these requests.  See Mem. of Law in Opp'n at 22-25.[18]

Since Jennings, the "overwhelming majority" of courts have concluded that when detention without a bond hearing has become unreasonable, the government must bear the burden of proof by clear and convincing evidence.  Joseph v. Decker, No. 18-CV-2640 (RA), 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018); see Perez v. Decker, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *6 (S.D.N.Y. Aug. 20, 2018) (courts in this District have concluded that imposing a clear and convincing standard on the Government would be most consistent with due process) (internal quotation marks, brackets, and citations omitted).

Moreover, the Court agrees that the IJ should consider alternatives to detention and Rosemond's ability to pay a monetary bond.  Indeed, courts in this District have held that due process requires these considerations.  See, e.g., Perez, 2018 WL 3991497, at *6 (Due Process Clause requires an IJ to consider alternatives to detention and a petitioner's ability to pay a bond); Hernandez, 2018 WL 3579108, at *12 ("[T]he Constitution compels" consideration of ability to pay and alternatives to detention).

Accordingly, I conclude and respectfully recommend that Your Honor should conclude, that at Rosemond's bond hearing Respondents should bear the burden to establish by clear and

---

[18] Although nowhere requested in the Petition, at oral argument, Rosemond's counsel stated that Rosemond should be produced in person for the bond hearing because appearing by VTC would not allow Rosemond to see either the IJ or counsel for both sides, and this would be detrimental for someone like Rosemond who is schizophrenic and hears voices.  Nonetheless, counsel conceded that the bond hearing could be conducted with Rosemond appearing by VTC, which is most likely in light of the current health risks attendant to producing Rosemond in person.  In any event, the Petition notes that Rosemond appeared by VTC throughout his removal proceedings, and the Court cannot see a basis to require his in-person appearance at the bond hearing, particularly during a pandemic.

convincing evidence that Rosemond poses a flight risk or a danger to the public; the IJ should meaningfully consider alternatives to imprisonment; and the IJ should meaningfully consider Rosemond's ability to pay if setting a monetary bond.  See Sophia v. Decker, 19 Civ. 9599 (LGS), 2020 WL 764729, at *5 (S.D.N.Y. Feb. 14, 2020) ("These two procedural safeguards -- a clear and convincing standard of proof, and consideration of the ability to pay and conditions of release -- are the two conditions most often ordered as constitutionally necessary.") (citations omitted).

**CONCLUSION**

Based on the foregoing, I conclude and respectfully recommend that Your Honor should conclude, that Rosemond's Emergency Motion for Immediate Interim Release (Docket # 16) should be **denied**.  However, I conclude, and respectfully recommend that Your Honor should conclude, that Rosemond's Petition for a Writ of Habeas Corpus (Docket # 1) should be **granted**, and that Respondents should be ordered to provide Rosemond with an individualized bond hearing, which must include the procedural safeguards set forth in this Report and Recommendation, **within 14 days[19]** of Your Honor's opinion on this Report and Recommendation.  I also conclude, and respectfully recommend that Your Honor should conclude, that Respondents should be ordered to release Rosemond from detention if they fail to provide such a hearing within 14 days of Your Honor's opinion on this Report and Recommendation.

---

[19] The Petition seeks a bond hearing within seven days, but the Court acknowledges that under the current circumstances and their impact on the operations of the Immigration Court, it might not be possible for Respondents to provide him with a bond hearing in that shorter period of time.

In light of the exigencies of the circumstances, the parties have consented to an expedited briefing schedule for any objections to this Report and Recommendation.  Accordingly, although 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure provide that parties may have 14 days to object to a magistrate judge's report and recommendation, the parties shall have seven (7) days from the issuance of this Report and Recommendation to file written objections, although this Court urges the parties to submit any objections even sooner, in light of the exigent circumstances of this case.  Any briefs filed in support of this Report and Recommendation shall be filed by the same date, unless otherwise ordered by Judge Román .  Any requests for an extension of time for filing objections must be directed to Judge Román .  The failure to file timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated: April 1, 2020
          White Plains, New York

                                        Respectfully submitted,

                                        /s/     *Lisa Margaret Smith*
                                        _____
                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York